NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| EILEEN O'DONNELL | Hon. Faith S. Hochberg |
| Plaintiff, | Civil Case No. 06-5351 (FSH) |
| v. | **OPINION** |
| GALE SIMON, an Assistant Commissioner of the New Jersey Department of Banking and Insurance; LEE BARRY, an Assistant Commissioner of the New Jersey Department of Banking and Insurance; HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC., HEALTH NET OF NEW JERSEY, INC., JAY GELLERT, and CURT WESTEN | Date: July 25, 2007 |
| Defendants. | |

**HOCHBERG, District Judge**

This matter comes before the Court upon Defendants Assistant Commissioners of the New Jersey Department of Banking and Insurance ("NJ-DOBI") Gale Simon ("Simon") and Lee Barry's ("Barry") Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Court has reviewed the parties' written submissions in accordance with Fed. R. Civ. P. 78.

**I.   Factual Background and Procedural History.**

Plaintiff Eileen O'Donnell ("Plaintiff") is an attorney licensed to practice law in the state of New Jersey with legal experience in the field of health care and health care management.  In

1995, Plaintiff sought employment with First Option Health Plan of New Jersey, Inc. ("First Option") and was hired as its associate general counsel.  Defendant Health Net bought First Option, and in 1997, Plaintiff became employed by Health Net.  In 2001, Plaintiff assumed more responsibilities for Health Net of the Northeast, and by 2003, Plaintiff functioned as regional counsel for Health Net.  As regional counsel, Plaintiff's duties included negotiating with all participating physicians, hospitals, and specialty providers in the New York, New Jersey, and Connecticut region.  Plaintiff also provided legal advice for the resolution of provider issues and served as a member of a national committee for development of standardized provider and disease state management contracts.  Throughout her employment within the Health Net organization, Plaintiff frequently interacted with various state governmental agencies including NJ-DOBI and two of its representatives, Defendants Simon and Barry.

      Plaintiff initiated this suit in 2006 against Defendants Health Net, Inc., Health Net of the Northeast, Inc., and Health Net of New Jersey, Inc. (collectively "Health Net"[1] ); Jay Gellert, the President and Chief Executive Officer of Health Net; Curt Westen, the Senior Vice-President, Secretary, and General Counsel for Health Net; and NJ-DOBI representatives Simon and Barry.  Plaintiff's claims against Defendants Simon and Barry allege violations of 42 U.S.C. §1983 and N.J.S.A. 10:6-1, *et seq.* (the New Jersey Civil Rights Act).  Plaintiff also alleges negligence, infliction of emotional distress, tortious interference with contractual relationships, tortious interference with prospective economic advantage, and defamation.  This action arises from a

---

[1] For purposes of this motion it is not necessary to distinguish between the various Health Net organizations.

series of interactions between NJ-DOBI and Health Net which allegedly resulted in the termination of Plaintiff from her position with Health Net.

Plaintiff alleges that she was terminated from Health Net because of Defendants Simon and Barry's dislike of her, which they openly expressed on occasion. Plaintiff became aware of Defendants Simon and Barry's dislike of her when she interacted with them at NJ-DOBI. Plaintiff alleges that on at least one occasion, Defendant Simon initiated a telephone communication with Plaintiff but did not talk to her once she was on the line and that on another occasion Defendant Simon declined to meet with her after she requested a meeting with Simon to discuss and resolve any concerns Simon had about her.

Plaintiff alleges that, in the course of the *Wachtel* (Docket No. 01-4183) and *McCoy* (Docket No. 03-1801) litigation before this Court, the *Wachtel* and *McCoy* plaintiffs and NJ-DOBI discovered that, in addition to the fact that Defendant Health Net had started using an improper database in July 2001 to calculate claim reimbursement to non-contracted providers in the small group market, Health Net of New Jersey had also used an improper database in 1999 ("the 1999 improper database.") However, Health Net either never informed NJ-DOBI of this error or did not institute the restitution it had promised. *See* Plaintiff's Complaint at ¶ 25. Plaintiff alleges that Defendants Simon and Barry publicly blamed Plaintiff for the 1999 improper database improprieties and characterized her alleged actions/inactions as "hiding" the violation from NJ-DOBI.

Plaintiff alleges that Defendants Simon and Barry summoned high-ranking officials of Health Net to a meeting in the summer of 2005 from which Plaintiff was excluded. At that meeting, Simon and/or Barry informed Health Net that Plaintiff was an impediment to good

relations between NJ-DOBI and Health Net.  Specifically, Plaintiff alleges that Defendants Simon and Barry described their dealings with Plaintiff as untrustworthy, uncooperative, and too adversarial and that therefore NJ-DOBI would no longer interact with Plaintiff as a representative of Health Net in its dealings with NJ-DOBI.

When Plaintiff contacted an employee at NJ-DOBI regarding the status of an agency filing she was handling on December 13, 2005, the employee informed Plaintiff that Defendant Simon had issued a directive to all departmental employees not to have any communication with Plaintiff in any matter.  When Plaintiff told Health Net of this information, her supervisor, Paul Dominianni, Esq., issued a memorandum directing her to have no dealings or contact with NJ-DOBI.

In early January 2006, Plaintiff informed Health Net that she was considering litigation against NJ-DOBI and some of its agents because of the alleged illegal "blackballing" she had suffered.  As a result, Plaintiff was summoned to New York City by Defendant Westen, the General Counsel for parent Health Net, and informed that she was being fired at the direction of Defendant Gellert, President of parent Health Net.  Defendant Westen told Plaintiff that she was not being fired for her performance but because Health Net had decided to move its New Jersey legal staff to Connecticut.  However, Defendant Westen explained to Plaintiff that her position would not be reserved for her even if she were willing to move to Connecticut.

Plaintiff filed her complaint against Defendants Simon, Barry, Health Net, Gellert, and Westen on November 8, 2006.  Presently before for the Court is Defendants Simon and Barry's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**II.     Standard of Review.**

To survive a Rule 12(b)(6) Motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-1965 (2007). The court's decision must be based solely on the legal sufficiency of the complaint. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents upon which the Plaintiff's claims are based. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994); *see also In re Donald Trump Casino Securities Lit.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993); *cert. denied, sub nom., Gollomp v. Trump*, 510 U.S. 1778 (1994).

**III.    Discussion.**

    **A.  42 U.S.C. §1983 Claim.**

To prevail under 42 U.S.C. §1983, a plaintiff must demonstrate that he or she was deprived of a federal right secured by the Constitution by a person acting under color of state law. *Popow v. City of Margate*, 476 F.Supp. 1237, 1240 (3d Cir. 1970) (*citing Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 150 (1970)). Plaintiff asserts that the request/demand made by Defendants Simon and Barry that Plaintiff be removed from contact or dealings with NJ-DOBI constituted action under color of state law. Plaintiff further alleges that such action wrongfully deprived Plaintiff of rights secured to her by the United States Constitution and/or other federal

law, including those property and liberty interests protected under the Fourteenth Amendment, in violation of  42 U.S.C. §1983.

Defendants Simon and Barry assert qualified immunity.  Qualified immunity protects government officials from liability and the burden to defend for an action that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Courts have repeatedly emphasized that qualified immunity is "an immunity from suit rather than a mere defense to liability," and that as such, qualified immunity questions shall be resolved "at the earliest possible stage in litigation."  *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

Claims of qualified immunity are analyzed under a two-step process.  *Id.*  The Court must first "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all."  *Sutton v. Rasheed*, 323 F.3d 236, 250 n.27 (3d Cir. 2003) (*citing Wilson v. Layne*, 526 U.S. 603, 609 (1999).  If the plaintiff has alleged such deprivation, the Court must "proceed to determine whether that right was clearly established at the time of the alleged violation."  *Id.*  Accordingly, the Court first considers whether Plaintiff has properly alleged a violation of her constitutional rights.

1.  Qualified Immunity:  Step 1

Plaintiff claims that the request/demand made by Defendants Simon and Barry that Plaintiff be removed from contact or dealings with NJ-DOBI wrongfully deprived her of property and liberty interests under the Fourteenth Amendment.  However, the Fourteenth Amendment does not provide Plaintiff with either a property or liberty interest in having contact with NJ-DOBI as an employee of Health Net.  *See, e.g. Hill v. Borough of Kutztown*, 455 F.3d 225 (3d

Cir. 2006), *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). To the extent that Plaintiff is alleging that she had a property and/or liberty interest in her employment with Health Net, the Fourteenth Amendment does not protect abstract or unilateral expectations of property interests. For a plaintiff to have a protected property interest she must have a "legitimate claim of entitlement to employment." *Anderson v. Philadelphia*, 845 F.2d 1216, 1220 (3d Cir. 1988). *See generally, Board of Regents*, 408 U.S. at 577. Plaintiff has not alleged an entitlement to her position at Health Net; instead, she has alleged a unilateral expectation of continued employment. Without more, Plaintiff cannot claim a protected property interest in her employment with Health Net.

Plaintiff also alleges that Simon and Barry violated her constitutionally protected liberty interests by effectively debarring her. While Plaintiff may have a liberty interest in pursuing her calling as an attorney, "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Piecknick v. Commonwealth of Pennsylvania*, 36 F. 3d 1250, 1259 (3d Cir. 1994) (*quoting Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)). Simon and Barry's refusal to interact with Plaintiff, based on alleged lack of trust stemming from their administrative dealings with her, did not deprive Plaintiff of the right to pursue her calling as an attorney.[2]

To the extent that Plaintiff alleges harm to her reputation and ability to pursue her calling as a Due Process violation, reputation alone is not a protected property or liberty interest under

---

[2] Plaintiff argues that she has a right to do business with the state based on the New Jersey Supreme Court's decision in *Department of Labor v. Titan Const. Co.*, 102 N.J. 1 (N.J. 1985). However, *Titan* provides that due process must occur before a person can be barred from seeking a public contract with a department or agency of the state. *Id.* at 16-17. It does not address a situation where an in-house counsel's arguments or attitudes are not deemed to be cooperative, persuasive, or credible to public agency employees.

the Fourteenth Amendment's Due Process Clause.  Defamation, by itself, is not a constitutional deprivation.  *Siegert v. Gilley*, 500 U.S. 226, 235 (1991).  Plaintiff must allege the loss of a protected property or liberty interest before she is able to invoke the protection of the Due Process Clause for her reputation.  *Paul v. Davis*, 424 U.S. 693, 701 (1976).  Because Plaintiff has not alleged the deprivation of a protected property or liberty interest by Defendants Barry and Simon, any allegation based on reputation alone is not actionable as a §1983 claim.

     2.  Qualified Immunity:  Step 2

Even if Plaintiff could conceivably articulate an actual constitutional right not to have public employees express their displeasure about her performance to her employer, such a right was certainly not clearly established at the time of the alleged violation.  *See, e.g., Harlow*, 457 U.S. at 818-819.  Defendants Simon and Barry are thus entitled to qualified immunity on the 42 U.S.C. §1983 claim.

**B.  New Jersey Civil Rights Act Claim.**

Count II of Plaintiff's Complaint alleges a violation of the New Jersey Civil Rights Act ("N.J.C.R.A.").  Plaintiff alleges that Simon and Barry violated her substantive due process rights under the New Jersey Constitution by demanding that she be fired and by debarring her from interaction with NJ-DOBI without notice or opportunity to be heard.  The New Jersey Supreme Court "has chosen to apply the same standards developed by the United States Supreme Court under the federal Constitution for resolving due process claims under the New Jersey Constitution."  *State Farm Mut. Auto, Ins. Co. v. State*, 124 N.J. 32, 46-47 (N.J. 1991).  In order to make out a claim of substantive due process, "a plaintiff must prove that it was deprived of a protected property interest by arbitrary or capricious government action."  *Sameric Corp. v. City*

*of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998). The defendant's actions must be "an abuse of executive power so clearly unjustified by any legitimate objective... as to be barred by the Fourteenth Amendment." *Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (holding that a police officer does not violate substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender). Consistent with Fourteenth Amendment Due Process Clause jurisprudence, New Jersey courts have not recognized a constitutionally protected property interest in "at-will" employment. *Smith v. Ebasco Constructors, Inc.*, 1988, No. 87-4170, U.S. Dist. LEXIS 3964, *14 (D.N.J. May 4, 1988). Plaintiff thus had no state constitutionally protected property interest in continued employment with Health Net.

New Jersey courts do recognize a property interest in reputation without requiring other tangible loss. *Doe v. Poritz*, 142 N.J. 1, 104 (N.J. 1995). However, the Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 202 (1989). The reputation interest protected in *Poritz* is distinguishable from the property interest claimed by Plaintiff.[3] In the instant case, accepting all factual allegations in the Complaint as true, the court finds that Plaintiff has failed to state a claim under the N.J.C.R.A. because Plaintiff has not alleged facts to support that she has been stigmatized by state law, *see, e.g., Poritz*, 142 N.J. at 104. Nor has Plaintiff alleged an abuse of executive power "so clearly unjustified by any

---

[3] In *Doe v. Poritz*, the New Jersey Supreme Court found a constitutionally protected interest in reputation where the plaintiff was stigmatized by classification as a "repetitive" and "compulsive" sex offender pursuant to New Jersey law.

legitimate objective" as to violate her due process rights.  *See Sacramento*, 523 U.S. at 840.[4]

Although Plaintiff alleges that Defendants Simon and Barry openly disliked her and that this caused them to bar her from interacting with NJ-DOBI, Plaintiff also alleges that Defendant Health Net encouraged Simon and Barry to believe that Plaintiff was involved in violations of NJ-DOBI regulations, which would be a legitimate basis for them to distrust her representations.

### C. Defamation Claim.

In Count XIII of her Complaint, Plaintiff raises a defamation claim against Defendants Simon and Barry based on alleged statements in the Summer of 2005 to high-ranking officials of Health Net that Plaintiff was untrustworthy, uncooperative, too adversarial, and was an impediment to good relations between Health Net and NJ-DOBI.  Plaintiff filed this Complaint on November 8, 2006.  The statute of limitations for defamation claims under New Jersey law is one year.  N.J.S.A. 2A:14-3 (2007).  Claims based on libel filed over one year after the publication of the defamation are clearly barred.  *Rodriguez v. The Home News*, 137 N.J. Super. 320, 323 (App. Div. 1975).  Plaintiff's claim of defamation regarding the alleged statements made prior to November 8, 2005 is therefore barred.

As a separate and independent basis, dismissal of Count XIII against Simon and Barry would also be appropriate based on privilege.  "A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable."

---

[4] Alternatively, it appears that the New Jersey Civil Rights Act parallels 42 U.S.C. §1983 and that therefore qualified immunity should apply to any N.J.C.R.A. claims against Defendants Simon and Barry, as found for Plaintiff's §1983 claim in this case.

*Coleman v. Newark Morning Ledger Co.*, 29 N.J. 357, 375 (1959).  To determine whether qualified privilege is a defense, a court will examine "the relationship of the parties, the persons to whom the statement is communicated, the circumstances attendant to the statement, and the manner in which the statement is made."  *Feggans v. Billington*, 291 N.J. Super. 382, 393 (App. Div. 1996).  Plaintiff's ability to effectively represent Health Net and interact with representatives of NJ-DOBI was of interest to both Defendants Simon and Barry and the executives of Health Net.  Plaintiff's Complaint confirms that both Health Net and NJ-DOBI officers Simon and Barry had an interest in these communications because it states that Health Net encouraged Defendants Simon and Barry to believe that Plaintiff was involved in the 1999 improper database non-disclosure by Health Net, in order to resolve this issue.

      When a court finds, as it does here, that a communication is privileged, the burden shifts to the plaintiff to demonstrate that the primary motive of the defendant is malicious in nature.  *Coleman*, 29 N.J. at 373.  To determine if malice has been shown, "'the court will look to the primary motive or purpose by which the defendant apparently is inspired'... it would seem that 'the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection.'"  *Id.* at 375,  *quoting Prosser on Torts* (2 ed.) 601, 627-8.  Plaintiff fails to allege facts sufficient to overcome the presumptive goodwill of the privileged communication because Plaintiff has not alleged that Defendants Simon and Barry were motivated primarily by malice.  Although Plaintiff's Complaint alleges that Defendants Simon and Barry openly disliked Plaintiff and that this caused Simon and Barry to bar her from interaction with NJ-DOBI, Plaintiff also alleges that Defendant Health Net encouraged the belief in Simon and Barry that Plaintiff was involved in violations of NJ-DOBI regulations, which

would be a legitimate basis for them to distrust her representations without any malice whatsoever.  Plaintiff's Complaint fails to allege facts which demonstrate that the "primary motive" of Defendants Simon and Barry was malicious in nature, as distinguished from a reaction based on having been deceived in their official investigation of Health Net.  *Id.* at 375.  While Health Net's employees are alleged to have been malicious in not informing Defendants Simon and Barry that Plaintiff was not the source of the deceit told to NJ-DOBI, Defendants Simon and Barry were on the receiving end of Health Net's statements describing its own employee (Plaintiff) as an untrustworthy actor who caused Health Net to violate NJDOBI's regulations administered by Barry and Simon.  Plaintiff's Complaint does not allege that Simon and Barry, as listeners of information blaming Plaintiff of deception, were primarily motived by malice.  The Court does not at this time decide whether Health Net was motivated by malice.

### D.  Common Law Tort Claims.

If an "alleged defamation claim is not actionable [because of a qualified privilege], then its consequences are not actionable because the conduct that caused those consequences was privileged."  *LiBiondo v. Schwartz*, 323 N.J. Super. 391, 417 (App. Div. 1999).  Counts IX, X, XI, and XII of Plaintiff's Complaint claim negligence, infliction of emotional distress, tortious interference with contractual relationships, and tortious interference with prospective economic advantage.  These claims are dependent upon the alleged defamatory remarks made by Defendants Simon and Barry to high-ranking Health Net officials.  Therefore, the common law tort claims do not survive because the defamation claim is dismissed on qualified privilege grounds.

**IV.     Conclusion.**

For the reasons stated above, Defendants Barry and Simon's Motion to Dismiss is granted.  An appropriate order will issue.

/s/ Faith S. Hochberg<br>
Hon. Faith S. Hochberg, U.S.D.J.